JOSIAH M. STAPLES and another, in equity,

*vs.*

THOMAS H. SPRAGUE and others.

Sagadahoc.   Opinion December 27, 1883.

*Partnership.   Authority to dispose of partnership property.*

Five persons mutually agreed to cut and pack for sale a quantity of ice, and, after deducting all expenditures, including their own labor, from the proceeds of sales, to divide the residue among them in equal shares.   *Held,* that this agreement created a partnership between the contracting parties.   Each partner was agent for all.

In the absence of fraud the majority of a firm can make a valid sale of ice, belonging to the firm, without the consent of the minority.

BILL in equity, heard on bill, answers and proof.

The opinion states the case.

*W. Gilbert,* for the plaintiffs.

*C. W. Larrabee,* for the defendants.

WALTON, J. This is a suit in equity, in which Josiah M. Staples and Marshall B. Graves, are the plaintiffs, and Thomas H. Sprague, James E. Lilly, and Alvah J. Hildreth, are the defendants.   And, by a supplementary bill, Jeremiah Millay, Seth T. Woodward, and S. Thomas Woodward, are also made defendants.

The prayer of the bill is for an account, and that the defendants may stand charged with, and be required to pay over to the plaintiffs, two-fifths of the net proceeds or value of one thousand seven hundred and twenty-five and one-half tons of ice.

The bill states and the evidence proves that in December, 1879, the two plaintiffs, and the three first named defendants, agreed to cut and pack for sale a quantity of ice, and that, after deducting all expenditures, the residue of the money derived from the sale, if any, should be divided among them in equal shares.

And the case shows that March 3, 1880, one of the defendants (Sprague) sold the ice for one dollar and twenty-five cents a ton.

The bill charges that this sale was for less than the market value of the ice, and that Sprague, in making the sale, acted without authority. And the plaintiffs claim that the defendants (the last three named being the alleged purchasers of the ice) shall be charged, not only with the price for which the ice was actually sold by Sprague, but further, for the highest price for which it might have been sold during that season.

We have read the evidence with care, and the impression which it makes upon our minds is that Sprague, in selling the ice, acted in perfect good faith; that he hesitated, negotiated, consulted such of his associates as he could reach, made every possible effort to get a better offer, and finally accepted the offer of one dollar and twenty-five cents a ton, because he thought it would be better for his associates as well as himself to do so, rather than to reject the offer and take the chances of getting a better one. The evidence shows that the price of ice immediately went up, but the evidence fails to show that on the day of the sale of this ice, the market price was much, if any, above what was obtained for it.

And there is no evidence of fraud or collusion on the part of the purchasers. True, they bought to sell again, and undoubtedly bought as cheaply as they could, and with the hope, and probably with the expectation, that ice would be higher, and that they would be able to sell at a profit. But the evidence fails to show any fraudulent practices on their part, or any collusion with Sprague or the other defendants, to defraud or injure the plaintiffs.

Having come to the conclusion that the sale was made without fraud or collusion, our next inquiry is whether Sprague had authority to make it. We think he had. The agreement to cut and store the ice created a partnership between the contracting parties. And it is familiar law that each partner is the agent of all. Story's Agency, § 39. Or, as Chancellor Kent states the law, in the absence of fraud, each one has the complete *jus disponendi* of the whole partnership interests, and is considered

to be the authorized agent of the firm. 3 Kent, 50, 10th edition. And in case of an actual disagreement, he adds that the weight of authority is in favor of the power of a majority of the firm, acting in good faith, to bind the minority. And such ought to be the law; for when there is a community of interest, certainly it is the will of the majority, and not the will of the minority, that ought to control. If there is a fraudulent combination on the part of the majority to injure or oppress the minority, the law is otherwise. But in the absence of fraud, certainly it is the majority, and not the minority, that ought to control. In this case, the sale by Sprague was with the knowledge and consent of Lilly and Hildreth; and they three constituted a majority of the firm. If the two plaintiffs had been present, and had actually dissented, we think it was a case where the will of the majority should control, and that Sprague, Lilly and Hildreth, being a majority of the firm, could have made a valid sale of the ice, without the consent of the plaintiffs. We think the sale was valid, and being made in good faith, it is the opinion of the court that the alleged purchasers are in no way liable to the plaintiffs, and that they, (Millay and the two Woodwards) must be discharged with several costs; and that the other defendants (Sprague, Lilly, and Hildreth) are to be charged with the amount for which the ice was actually sold by Sprague, and no more. With respect to the three last named defendants (Sprague, Lilly, and Hildreth) the bill must be sustained for the purpose of settling up the affairs of the firm; and for that purpose the case must go to a master.

> *Original bill against Sprague, Lilly, and Hildreth, sustained; the case to go to a master to take an account.*
>
> *Supplementary bill against Millay, and the two Woodwards, dismissed, with costs for each.*

APPLETON, C. J., BARROWS, DANFORTH and PETERS, JJ., concurred.